FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
JUL 15 2026
ERIK PALTROW
CLERK

**UNITED STATES DISTRICT COURT**

**for the**

**DISTRICT OF NEW MEXICO**

**IN THE MATTER OF THE ESTATE OF**
**EUGENE JOSEPH MCGUIRE, DECEASED**

---

**ROSEMARY S. HUNTER,**
**Petitioner,**

26 cv 2167-GBW-SCY

**v.**

**ANDREW McGUIRE,**
**RACHEL ELLSWORTH,**
**And**
**DAVID McGUIRE,**
**Defendants**

---

**ANDREW McGUIRE,**
**RACHEL ELLSWORTH,**
**And**
**DAVID McGUIRE,**
**Counter-claimants,**

**v.**

**ROSEMARY S. HUNTER,**
**Counter-defendant.**

**COUNTER-CLAIM**

Pursuant to Rule 13 of the Rules of Civil Procedure, Defendants Andrew McGuire, Rachel Ellsworth, and David McGuire, hereby make the following counter-claim against Petitioner Rosemary S. Hunter:

## Jurisdiction

1. Jurisdiction of this Court is alleged to arise from the diversity jurisdiction provided for in 28 U.S.C. §§ 1332(a), which confers original jurisdiction upon federal courts to hear suits between citizens of different states where the amount in controversy exceeds $75,000.

## Parties

2. Andrew McGuire is an adult male resident of the District of Columbia and a U.S. citizen.
3. Rachel Ellsworth is an adult female resident of the Commonwealth of Pennsylvania and a U.S. citizen.
4. David McGuire is an adult male resident of the State of Arizona and a U.S. citizen.
5. Rosemary S. Hunter is an adult female resident of the State of South Carolina and a U.S. citizen.

## FACTS

6. Eugene McGuire was natural father to Counter-claimants Andrew McGuire, Rachel Ellsworth, and David McGuire.
7. Eugene McGuire worked for Sandia National Laboratory in Albuquerque, New Mexico as a physicist from 1965 to 1999.
8. During his term of employment, Mr. McGuire received various forms of retirement benefits from his employer, including a pension plan that was eventually merged into a 401(k) account.
9. Upon information and belief, Counter-defendant Rosemary S. Hunter married Counterclaimants' father Eugene McGuire in 1993.
10. At the time of their marriage, Mrs. Hunter, like Mr. McGuire, had been previously married and divorced, with children of her own. (Mrs. Hunter and Mr. McGuire had no

children and did not have any children in common).

11. At the time of their marriage, in recognition of New Mexico's community property laws, and with an eye towards passing on their individual wealth to their own respective children, Mr. McGuire and Mrs. Hunter agreed to waive any interest in the other party's sole and separate property that they had brought into their 1993 marriage.
12. These waivers were made in formal written agreements, and included each party's retirement funds.
13. Rosemary S. Hunter signed a waiver of spousal interest to Eugene McGuire's pension benefits shortly after their 1993 marriage.
14. Even after their marriage, Rosemary S. Hunter and Eugene McGuire would from time to time enter into written agreements whereby one or the other would waive any interest in or claim to certain properties that might otherwise be deemed community property.
15. Rosemary S. Hunter signed a waiver of spousal interest when Eugene McGuire's pension converted into the Sandia National Laboratories Savings and Income 401(k).
16. In 2010, when Eugene McGuire's Sandia National Laboratories Savings and Income 401(k) rolled over to an Individual Retirement Account ("IRA") with Fidelity Management Trust Co. ("FMTC"), Rosemary S. Hunter signed yet another waiver of spousal interest.
17. Eugene McGuire dutifully signed every waiver of spousal interest requested by his wife for her various real estate holdings, professional earnings, bank accounts, and retirement funds that were generated during the life of their marriage.
18. On the date of his death (February 16, 2026), Eugene McGuire owned an Individual Retirement Account that FMTC held as custodian.

19. The beneficiaries on this IRA account are Andrew McGuire, Rachel Ellsworth, and David McGuire, and no one else.

20. The beneficiaries on the Sandia National Laboratories Savings and Income 401(k) – the source of the funds that were rolled over into the Fidelity IRA - were also Andrew McGuire, Rachel Ellsworth, and David McGuire, and no one else.

21. The beneficiaries on Eugene McGuire's Sandia National Laboratories pension plan – the source of the funds that were rolled over into the Sandia National Laboratories Savings and Income 401(k) - were also Andrew McGuire, Rachel Ellsworth, and David McGuire, and no one else (at least as of the time of Eugene McGuire's 1984 divorce from his first wife, Counter-claimants' mother).

22. In March of 2016, and several times thereafter, Eugene McGuire advised his children that he was leaving them his Sandia Labs retirement funds. He re-iterated that several times in the days and weeks before his death.

23. In December of 2025, in the presence of her husband's in-home medical staff and one of the Counterclaimants, Rosemary Hunter stated to her husband, "Gene, you know that we agreed that my retirement would go to my children, your retirement would go to your children, and we'd use the trust to split this house between both our children."

24. After Eugene McGuire's death, Counter-defendant Rosemary S. Hunter wrote an email to Counter-claimants on February 25, 2026 saying, "I thought you might like to see the attached [Fidelity] statements .... your Dad left these to be equally shared by you three."

25. Consequently, counterclaimants notified FMTC that their father had passed away on February 16, 2026.

26. At that time, FMTC acknowledged that counterclaimants were the sole named

beneficiaries of the Fidelity IRA. FMTC also acknowledge the subject IRA exceeded $75,000 in value as of the date of Eugene McGuire's death.

27. Further, at that time, FMTC offered to open "Inherited IRA" accounts for each of the counterclaimants. Counterclaimants accepted Fidelity's offer and each of them opened an "Inherited IRA" account.

28. Weeks after notifying FMTC that Eugene McGuire had died, counterclaimants each contacted FMTC to inquire when the "Inherited IRA" accounts would be funded.

29. FMTC responded to those inquiries by notifying counterclaimants that Mr. McGuire's widow Rosemary S. Hunter had emailed FMTC and demanded that FMTC not fund counterclaimants' Inherited IRA accounts.

30. On March 18, 2026, FMTC sent a letter to Mrs. Hunter indicating that FMTC had "maintained a temporary restriction to the retail account registered to … Eugene McGuire." That March 18, 2026 letter, which was "cc'd" to counterclaimants, further indicated that the temporary restriction would expire on May 17, 2026 unless Mrs. Hunter presented FMTC with a Court order specifically directing Fidelity to restrict the account.

31. On May 18, 2026, FMTC notified counterclaimants that the "temporary restriction" was not being lifted. Instead, FMTC notified counterclaimants that FMTC was going to send Mrs. Hunter another letter and give her another 30 days to obtain a court order.

32. Some time after May 18, 2026, FMTC "cc'd" counterclaimants on the letter it sent to Mrs. Hunter indicating that it may lift the restriction unless Mrs. Hunter provided FMTC with a Court order no later than June 17, 2026.

33. On their own, third-party defendants learned that on June 17, 2026, Mrs. Hunter did

indeed file in the Second Judicial District of New Mexico a complaint against Andrew McGuire, Rachel Ellsworth, and David McGuire to invalidate their father's beneficiary designations to his IRA.

34. However, Mrs. Hunter had made no efforts to serve any of the counterclaimants with this lawsuit – she did not even request that the court issue summons for the Defendants. It thus appears that rather than prosecuting her dubious claim in court, the sole purpose of Mrs. Hunter's filing was to continue to hamstring FMTC from administering her deceased husband's Rollover IRA for the benefit of its named beneficiaries.

35. On or about July 7, 2026, counterclaimants received another "cc'd" letter from FMTC to Rosemary S. Hunter. This one was dated June 25, 2026, with FMTC acknowledging receipt of Mrs. Hunter's Petition, and noting that a "permanent restriction" was now being maintained by FMTC on the Rollover IRA registered to Eugene McGuire.

36. On July 7, 2026, Mrs. Hunter's lawsuit was removed to this federal court.

37. Counterclaimants have been harmed and continue to be harmed by Rosemary S. Hunter's tortious interference with contract, abuse of process, and libel/slander of title.

38. Counterclaimants' damages exceed $75,000, insomuch as there is more than $75,000 in the IRA owned by Eugene McGuire that are being wrongly withheld from them by FMTC as a result of Rosemary S. Hunter's tortious interference, abuse of process, and slander of title. Counterclaimants have also suffered compensable non-economic damages, including stress, anxiety, nervousness, and severe emotional distress due to Rosemary S. Hunter's actions described herein.

**Count I (Tortious Interference with Contract)**

39. Counterclaimants re-allege and incorporate herein paragraphs 1 through 38 herein.

40. Counter-defendant Rosemary S. Hunter, without justification or privilege to do so, induced Fidelity not to perform a contract with another, namely, by convincing Fidelity not to honor Eugene McGuire's beneficiary designation and making false statements about .

41. Rosemary S. Hunter had knowledge of the IRA account's designated beneficiaries, and played an active and substantial part in causing counterclaimants to lose the benefits of being the designated beneficiaries to their father's IRA.

42. Rosemary S. Hunter induced Fidelity's refusal to honor the beneficiary designation without justification or privilege to do so.

43. As a result, counterclaimants have suffered and continue to suffer the economic and non-economic damages described herein. Due to the intentional nature of Counter-defendant's actions, punitive damages should be awarded as well.

**Count II (Abuse of Process)**

44. Counterclaimants re-allege and incorporate herein paragraphs 1 through 43 herein.

45. The elements of malicious abuse of process are: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages.

46. An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process."

47. By filing her lawsuit against Counterclaimants but failing to in any way try to serve them with it, or otherwise notify them of it, Counter-defendant Rosemary S. Hunter has improperly used the court system to delay Counterclaimants from receiving the IRA funds left to them by their father.

48. Moreover, Rosemary S. Hunter knew or should have known that she had previously and repeatedly waived any spousal claim or interest in her husband's IRA account; accordingly, her "Petition" was without probable cause.

49. As a result, counterclaimants have suffered and continue to suffer the economic and non-economic damages described herein. Due to the intentional nature of Counter-defendant's actions, punitive damages should be awarded as well.

**Count III (Slander Against Title)**

50. Counterclaimants re-allege and incorporate herein paragraphs 1 through 49 herein.

51. Slander of title occurs when one who, without the privilege to do so, willfully records or publishes matter which is untrue and disparaging to another's property rights as would lead a reasonable man to foresee that the conduct of a third purchaser might be determined thereby.

52. By doing the things described herein, Counter-defendant Rosemary S. Hunter did maliciously slander Counter-claimants' right, title, and interest in their father's Rollover IRA.

53. As a result, counterclaimants have suffered and continue to suffer the economic and non-economic damages described herein. Due to the intentional nature of Counter-defendant's actions, punitive damages should be awarded as well.

54. Moreover, legal remedies may be inadequate, in which case, only equity will serve

Counterclaimants, and they must be awarded a declaratory judgment that they are in fact the only true beneficiaries of their father's Fidelity IRA.

**Count IV (Malice)**

55. Counterclaimants re-allege and incorporate herein paragraphs 1 through 54 herein.

56. In each of the foregoing counts, Counterclaimants have plead actions which lend themselves to a punitive damages award upon a finding that Counter-defendant acted with malice.

57. Counter-defendants' malice is born from her evident disdain with her now deceased husband, who she accuses in her petition of failing to sufficiently provide for her and her welfare following his death. Mrs. Hunter's petition also suggests that her husband had made certain promises regarding supporting her due to *her* ailing health.

58. Mrs. Hunter's utter disdain for her husband was well known and public. During the life of the marriage, Mrs. Hunter would routinely and publicly excoriate, denigrate, and verbally abuse her husband.

59. Mrs. Hunter's malice is mis-placed. Rosemary S. Hunter abandoned her terminally ill husband months before he was placed in at-home hospice, announcing to numerous family members that she would no longer be physically present to support him. While on hospice, Mr. McGuire suffered numerous falls and other accidents and injuries that would not have been so detrimental to his health but for the fact that he was often totally alone and unable to call for help.

60. At the time of his death, Eugene McGuire, left his wife Rosemary S. Hunter close to $400,000 in cash, $150,000 in life insurance benefits, and another $150,000 to $200,000 in cash benefits that were paid or payable to Mr. McGuire as a result of the settlement of

his EEOICPA claim related to his exposure to toxic beryllium poisoning while working at Sandia Laboratories. (After being in hospice for three and half months, Mr. McGuire ultimately died of complications related to this beryllium poisoning.).

61. Mr. McGuire further left his wife, through his last will and testament, everything he owned, including his extensive book collection, a car valued at approximately $40,000, valuable artwork, and all of the furnishings and other personal property that he maintained at his home in Los Ranchos de Albuquerque.

62. Over the life of the marriage, Eugene McGuire had further waived any spousal interest to all of the real property she purchased during the marriage, as well as to her income and retirement benefits.

63. Mr. McGuire had further, a year before his death, deeded that Los Ranchos home, which he owned as tenants by the entireties with Mrs. Hunter and which was fully paid-off, to a revocable trust controlled just by Rosemary S. Hunter.

64. Mrs. Hunter, upon information and belief, owns numerous real properties, worth millions of dollars, including the house in Pawley's Island, South Carolina where she currently claims a residence. She also has hundreds of thousands of dollars in cash that she received upon her husband's death, along with retirement funds and other investments.

65. Rosemary S. Hunter has now for no clear reason transferred that malice and ill will toward her husband onto Counterclaimants. Her malice is demonstrated by the way in which she, on the one hand, informed counterclaimants that "your Dad left these [Fidelity accounts] to be equally shared by you three," while *at the same exact time* she was reaching out to Fidelity to falsely claim some right or interest in her deceased husband's IRA in an improper attempt to prevent its normal and ordinary distribution to

the designated beneficiaries. Mrs. Hunter knows full well that she signed numerous waivers of spousal rights for her husband's retirement benefits, yet she has made the calculation that she can put words into her dead husband's mouth to invent a reason – any reason – for her to get her hands on the inheritance that she knows "Gene" had left for his children.

66. As a result, counterclaimants have suffered and continue to suffer the economic and non-economic damages described herein. Due to the intentional nature of Counter-defendant's actions, punitive damages should be awarded as well.

WHEREFORE, the counterclaimants Andrew McGuire, Rachel Ellsworth, and David McGuire do hereby pray:

- For a judgment to be entered in the favor and against Rosemary S. Hunter in an amount that exceeds $75,000;
- For a declaratory judgment that Rosemary S. Hunter waived all interest in Eugene McGuire's Rollover IRA and the predecessor retirement accounts;
- For an award of punitive damages against Rosemary S. Hunter;
- For an award of costs and attorney's fees.
- And for such other relief that the Court finds is just and reasonable.

Respectfully submitted,

/s/ Andrew McGuire 7/13/2026

Andrew McGuire, *pro se*
3204 Pope Street SE
Washington, DC 20020
United States
Phone number: 2024946114
mcguireesquire@msn.com

Signed by:
Rachel Ellsworth
92B97973FCD14F9... 7/9/2026

Rachel Ellsworth, *pro se*
220 TIOGA ST
JOHNSTOWN, PA 15905-2435
girliemac14@gmail.com

DocuSigned by:
David McGuire
61D77E2A601642E... 7/9/2026

David McGuire, *pro se*
5581 N PASEO PESCADO
TUCSON, AZ 85718-5127
Davidmcguire116@comcast.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFIY that on the 13th day of July, 2026, I served a true copy of the forgoing, by U.S. Mail and email, on the following:

Rosemary S. Hunter
c/o
Matthew I. Barceleau, Esq.
2701 Arizona St NE
Albuquerque, NM 877110
mbarceleau@newmexicolegalgroup.com

Rachel Ellsworth, *pro se*
220 TIOGA ST
JOHNSTOWN, PA 15905-2435
girliemac14@gmail.com

Kurt A. Sommer, Esq.
Attorney for Rachel Ellsworth, Defendant
2000 Old Pecos Trail
Santa Fe, NM 87505
email: kurts@sommerudall.com

David McGuire, *pro se*
5581 N PASEO PESCADO
TUCSON, AZ 85718-5127
Davidmcguire116@comcast.net

/s/ Andrew McGuire

Andrew McGuire

Part # 156297-489 RRDB2 EXP 06/26

Align top of FedEx® shipping label here.

ORIGIN ID:VJIA (202) 494-6114
ANDREW MCGUIRE

1809 20TH ST NW #52

WASHINGTON, DC 20009
UNITED STATES US

SHIP DATE: 13JUL26
ACTWGT: 1.15 LB
CAD: 6754852/SSF02701

BILL CREDIT CARD

TO CLERK CIVIL DIVISION
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
333 LOMAS BLVD. NW, SUITE 270
ALBUQUERQUE NM 87102

(202) 494-6114 REF:
INV:
PO: DEPT:

FedEx Express

E

J261026012001uv

TUE - 14 JUL 5:00P
STANDARD OVERNIGHT

TRK# 0201 3825 8056 7920

XX ONMA

87102
NM-US ABQ

Reusabl Enve
Recycle me.

4866 TUE 07/14 07:39
333 LOMAS BLVD NW
527-7560
EIP 3
SP PD 100 Y
87102-2274-70
ALBUQUERQUE,NM