**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ROSEMARY S. HUNTER,

Petitioner,

v.

ANDREW MCGUIRE,
RACHEL ELLSWORTH,
and
DAVID MCGUIRE,

Defendants

ANDREW MCGUIRE,
RACHEL ELLSWORTH,
and
DAVID MCGUIRE,

Third-Party Plaintiffs,

v.

FIDELITY MANAGEMENT
TRUST COMPANY,

Third-Party Defendant.

Case No. 1:26-cv-02167-GBW-SCY

**THIRD-PARTY DEFENDANT FIDELITY MANAGEMENT TRUST COMPANY'S MOTION TO STRIKE OR DISMISS**

## I. INTRODUCTION

This matter concerns the proper ownership of assets held in an Individual Retirement Account ("IRA") for the benefit of Decedent, Eugene Joseph McGuire ("Decedent"). Third-Party Defendant, Fidelity Management Trust Company ("FMTC"), acts as Custodian for the IRA, pursuant to a Fidelity IRA Custodial Agreement, and its affiliate, Fidelity Brokerage Services LLC ("FBS"), provides administrative services for the IRA pursuant to a Customer Agreement between Decedent and FBS. FMTC and FBS are hereinafter referred to together as "Fidelity." Decedent's three biological children—the Defendants/Third-Party Plaintiffs in this action—were the designated beneficiaries of Decedent's IRA at the time of Decedent's death. Within a few weeks of Decedent's death, however, his widow, Rosemary S. Hunter, notified FBS that she was disputing Defendants/Third-Party Plaintiffs' claim to the IRA assets. Pursuant to the Customer Agreement governing the IRA, Fidelity temporarily restricted the IRA to await a court adjudication establishing ownership of the assets in the IRA. However, before any court had the opportunity to rule on who was legally entitled to the IRA assets, the Third-Party Plaintiffs filed a complaint against FMTC, claiming FMTC had not properly handled the process and that their father's IRA was being wrongfully withheld from them.

FMTC should be dismissed from this case.[1] The Third Party Complaint against FMTC is procedurally improper under Federal Rule of Civil Procedure 14 and it also fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2]

[1] Pursuant to D.N.M.LR-Civ. 7.1(a), FMTC's counsel conferred with the Third-Party Plaintiffs on September 10, 2026 regarding this motion. Andrew McGuire responded that he opposes the motion; FMTC presumes the other Third-Party Plaintiffs oppose as well.

[2] By filing the present motion, FMTC does not waive any rights or any defenses to Third-Party Plaintiffs' claims against it, should they survive this motion.

## II. PROCEDURAL HISTORY

On June 17, 2026, Petitioner Rosemary S. Hunter ("Ms. Hunter") filed a lawsuit in New Mexico state court entitled, "Petition to Invalidate Beneficiary Designations of Fidelity Account to Eugene Joseph McGuire." (Dkt. 1, ¶ 1). On July 6, 2026, Decedent's children, Defendants/Third-Party Plaintiffs ("Third-Party Plaintiffs") removed the action to federal court. (*See* Notice of Removal (Dkt. 1)). In the removal papers, Third-Party Plaintiffs acknowledge that New Mexico is a community property state, but argue that Petitioner's lawsuit was improper both procedurally and on the merits. (*See* Dkt. 1, ¶¶ 7–9.)

After removing, Third-Party Plaintiffs filed a "Third Party Complaint" against FMTC pursuant to Federal Rule of Civil Procedure 14 (Dkt. 7, "TPC"), asserting claims against FMTC for breach of fiduciary duty, breach of contract, and violation of New Mexico's Unfair Practices Act (UPA). Third-Party Plaintiffs allege that FMTC's "refusal" to immediately fund their Inherited IRAs and to disclose certain documents resulted in damages to them. (TPC ¶¶ 32–33.)[3] Fidelity was served with the Third Party Complaint on August 4, 2026.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. Rule 14

Under Rule 14, a defendant in a federal action may, as a third-party plaintiff, bring in a third party. Fed. R. Civ. P. 14(a)(1). The rule allows claims against a nonparty "who is or may be liable to it for all or part of the claim against it." *Id*. The defendant, as third-party plaintiff, "may not bring a third-party defendant into a lawsuit merely on the grounds that he is liable to the

[3] After removing the case to federal court, Third-Party Plaintiff Andrew McGuire filed a Rule 12(b)(2) Motion to Dismiss, arguing that the Court does not have personal jurisdiction over either Petitioner Ms. Hunter or any of the Third-Party Plaintiffs. Should the Court decide that the case should be dismissed for lack of personal jurisdiction, that ruling would apply also to FMTC.

plaintiff." *Wiatt v. State Farm Ins. Cos.*, 560 F. Supp. 2d 1068, 1074 (D.N.M. 2007). Rather, a third-party claim may be brought "only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to [the] defendant." *Id.* (quoting *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994)). Rule 14(a)(4) allows a party to "move to strike the third-party claim." Fed. R. Civ. P. 14(a)(4); *see also City of Las Cruces v. Lofts at Alameda, LLC*, 647 F. Supp. 3d 1096, 1104 (D.N.M. 2022).

**B. Fed. R. Civ. P. Rule 12(b)(6)**

Rule 12(b)(6) permits a defendant to challenge a complaint on the grounds that, even if all factual allegations are true, the plaintiff has not stated a legally sufficient claim for relief. To withstand a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to allege sufficient facts to support a claim that is facially plausible. *Twombly*, 550 U.S. at 564–70. "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sanchez v. Torrez*, 173 F.4th 1202, 1225 (10th Cir. 2026) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 174 F.4th 1235, 1244 (10th Cir. 2026) (quoting *Iqbal*, 556 U.S. at 678); *see also Manning v. City of Tulsa*, 170 F.4th 1287, 1299 (10th Cir. 2026) ("mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice"). Further, on a motion to dismiss, a court "need not

accept . . . allegations plainly contradicted by properly considered documents or exhibits." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023).

## IV. FACTUAL BACKGROUND

The Third Party Complaint alleges the following facts:[4]

Decedent worked at Sandia National Laboratory from 1965 to 1999. (TPC ¶ 8.) Decedent married Rosemary Hunter in 1993. (*Id.* ¶ 12.) In or about 2010, Decedent's Sandia National Laboratories Savings and Income 401(k) retirement account was rolled over into an Individual Retirement Account (the "IRA") with FMTC, and Decedent designated the Third-Party Plaintiffs as the beneficiaries of the IRA. (*Id.* ¶¶ 10, 11, 14.)

Decedent died on February 16, 2026, and Third-Party Plaintiffs notified FMTC of his death shortly thereafter. (*Id.* ¶¶ 13–14.) Each of the Third-Party Plaintiffs completed an application to open an Inherited IRA. (*Id.* ¶ 47.) In doing so, the Third-Party Plaintiffs entered into a contract with Fidelity to manage their Inherited IRAs. (*See id.* ¶¶ 48–50.)

A true and correct copy of the Fidelity Brokerage Retirement Customer Account Agreement (the "Customer Agreement") is attached hereto as **Exhibit 1**, and a true and correct copy of the and the IRA Custodial Agreement ("Custodial Agreement") is attached hereto as **Exhibit 2**.[5]

---

[4] Solely for the purposes of this motion, Fidelity assumes the truth of well-pled factual allegations in the Third Party Complaint.

[5] On a motion to dismiss, the Court may consider documents referenced in the Complaint where the authenticity of the documents is not in question. *See Morphew v. Chaffee Cnty., Colo.*, 172 F.4th 802, 813 (10th Cir. 2026); *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005); *Lucero v. State Farm Mutual Auto Insurance et al.*, 2026 WL 2255078, at *2 (D.N.M. Aug. 5, 2026).

Pertinent to this case, the Customer Agreement outlines Fidelity's policies when funds are disputed, stating in relevant part:

> Fidelity reserves the right to restrict your account from withdrawals and/or trades if there is a reasonable suspicion of fraud, diminished capacity, or inappropriate activity. **Fidelity also reserves the right to restrict your account from withdrawals and/or trades if Fidelity is put on reasonable notice that the ownership of some or all of the assets in the account is in dispute.**

(Customer Agreement, Exh. 1, at p. 13.)

The Custodial Agreement states that "the Custodian **may** distribute or transfer any portion of the Account immediately following the death of the Depositor." (Custodial Agreement, Exh. 2, ¶ 7(a) (emphasis added).) The Custodial Agreement further states, with respect to beneficiary designations:

> (d) *Judicial Determination.* Anything to the contrary herein notwithstanding, in the event of reasonable doubt respecting the proper course of action to be taken, the Custodian may in its sole and absolute discretion resolve such doubt by judicial determination which shall be binding on all parties claiming any interest in the Account. In such event all court costs, legal expenses, reasonable compensation of time expended by the Custodian in the performance of its duties, and other appropriate and pertinent expenses and costs shall be collected by the Custodian from the Custodial Account in accordance with Article VIII, Section 18.

(*Id.* ¶ 7(d).) Before the assets from Decedent's IRA could be transferred to the Inherited IRAs in accordance with the beneficiary designations, Fidelity was notified that Decedent's widow, Ms. Hunter, was disputing Third-Party Plaintiffs' ownership of the IRA assets. (TPC ¶¶ 17, 21.) In accordance with the express terms of the Customer Agreement and Custodial Agreement, Fidelity notified Third-Party Plaintiffs about the dispute regarding the funds and placed a temporary restriction on the IRA pending receipt of a court order establishing legal entitlement to the IRA. (*See id.* ¶¶ 17, 21–23.)

## V. ARGUMENT

### A. FMTC Was Improperly Brought in as a Third-Party Defendant in this Case.

The Third Party Complaint against FMTC should be stricken under Rule 14(a)(4).

Rule 14(a) allows a defending party in a federal suit to assert a third-party claim against a nonparty ***only when*** the nonparty "is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). In naming FMTC, Third-Party Plaintiffs do not seek indemnity, contribution, or subrogation from it. Their claims against FMTC are not dependent on whether Ms. Hunter prevails in her attempt to invalidate the IRA's beneficiary designations, establish a constructive trust, or estop or enjoin Third-Party Plaintiffs from accessing the IRA funds. Instead, the Third-Party Plaintiffs make free-standing claims against FMTC—that they were harmed by FMTC's alleged refusal to immediately fund their inherited IRAs and to provide certain documents. (*See* TPC ¶ 32.)

The distinction is critical. The District of New Mexico interprets the impleader rule to mean that the third-party plaintiff "must allege derivative liability against the third-party defendant." *Wiatt*, 560 F. Supp. 2d at 1074. "If the claim is separate or independent from the main action, impleader will be denied." *Id.* (quoting *Bathgate*, 27 F.3d at 873); *see also City of Las Cruces*, 647 F. Supp. 3d at 1104 (describing the language of Rule 14 as "clear"). "The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." *Tecma Transportation Servs., LLC v. 200 S. Pemberton, LLC*, No. 2:22-cv-456, 2023 WL 4196956, at *4 (D.N.M. June 27, 2023), *report and recommendation adopted*, 2023 WL 4745958 (D.N.M. July 25, 2023).

In *F.D.I.C. v. Bathgate*, when defendants purported to bring a third-party complaint against individual officers of the bank that had filed suit against them, the Third Circuit held that their

action did "not qualify as a third-party complaint under Rule 14(a)" because the officers' liability was "not derivative" of the defendants' liability. 27 F.3d at 872–73. In that case, defendants alleged several claims against the officers—including consumer fraud act violations and breach of the duty of good faith—that were *related* to the underlying litigation, but because those claims were independent of whether the defendants won or lost against the first-party plaintiff, they were not the proper subject of a third-party complaint. *Id. Bathgate*'s seminal holding was relied on in *Wiatt* and by federal courts to dismiss improper third-party pleadings. *See, e.g.*, *AllTech Commc'ns, LLC v. Brothers*, 601 F. Supp. 2d 1255, 1258–59 (N.D. Okla. 2008) ("A claim that is not derivative of or dependent on the main claim cannot be inserted into the controversy pursuant to Rule 14(a), even if it is factually related and arises from the same transaction or occurrence."); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 69 F. Supp. 2d 678, 690 (M.D. Penn. 1999) (granting motion to dismiss claims because the third-party plaintiff sought to recover its own damages "independent of the success" of the original action).

Here, Third-Party Plaintiffs' claims against FMTC for breach of fiduciary duty, breach of contract, and unfair trade practices are wholly independent of Petitioner Ms. Hunter's claim against them. Third-Party Plaintiff McGuire concedes that "the actual controversy" in this case is: "who gets the IRA?" (Dkt. 1, ¶ 9). FMTC has no stake in that controversy, and is simply awaiting a court order confirming the proper beneficiaries and directing it to distribute the assets at issue.

Insofar as Third-Party Plaintiffs are "liable" to Petitioner for the funds in the IRA, or vice versa, their claims against FMTC do not rise and fall based on the outcome of that dispute. *See Est. of Lemuel v. El Paso Cnty.*, No. 20-cv-01875, 2021 WL 4439791, at *3 (D. Colo. Sept. 27, 2021) ("[T]he third-party complaint is a narrow device for seeking indemnification or contribution

from a person 'who is or may be liable to (the defendant) for all or part of the plaintiff's claim against him.").

Third-Party Plaintiffs' Counterclaim against Ms. Hunter further demonstrates the impropriety of bringing in FMTC as a party to this suit. (*See* Dkt. 8.) Third-Party Plaintiffs make claims against Ms. Hunter including for abuse of process and malice, alleging that Ms. Hunter "abandoned her terminally ill husband," and misrepresented to Third-Party Plaintiffs that "your Dad left these [Fidelity accounts] to be equally shared by you three." (*Id.* ¶¶ 59, 65).

In short, Rule 14 affords Third-Party Plaintiffs no third-party claim against FMTC. FMTC therefore respectfully requests that this Court strike the Third Party Complaint against it pursuant to Rule 14(a)(4) and dismiss FMTC from this action.

**B. Third-Party Plaintiffs Also Fail to State a Claim Against Fidelity.**

The Third Party Complaint is procedurally improper under Rule 14. Even if deemed procedurally proper, the claims against FMTC are subject to dismissal under Rule 12(b)(6). Two of the claims should be dismissed because they are contradicted as a matter of law by the express terms of the contracts between the Third-Party Plaintiffs and Fidelity, contained in the Custodial Agreement and the Customer Agreement. Third-Party Plaintiffs' allegations also fail to state a UPA claim against FMTC.

**1. Third-Party Plaintiffs Fail to Plead Breach of Fiduciary Duty (Count I)**

The elements of a cause of action for breach of fiduciary duty are: duty, breach of duty, proximate cause, and damages. *Horizon/CMS Healthcare Corp. v. Am. Cont'l Ins. Co.*, No. CV 99-966, 2000 WL 36740002, at *4 (D.N.M. May 2, 2000) (citing New Mexico law); *see also*

*Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279, 295 (D. Mass. 2014) (citing Massachusetts law).[6]

Third-Party Plaintiffs allege that FMTC owed, and breached, its fiduciary duty by refusing to "immediately" transfer Decedent's IRA assets into their inherited IRAs upon receiving a certificate of Mr. McGuire's death. (TPC ¶ 41). It is clear from the Custodial Agreement governing the IRA that FMTC had no such duty. In relevant part, the Custodial Agreement states:

> the Custodian **may** distribute or transfer any portion of the Account immediately following the death of the Depositor (or following the death of the Depositor, the Beneficiary) under the provisions of the designation then on file with the Custodian, and such distribution or transfer discharges the Custodian from any and all claims as to the portion of the Account so distributed or transferred. The latest such designation or change or revocation shall control except as determined by applicable law…
>
> In the event of reasonable doubt respecting the proper course of action to be taken, the Custodian may in its sole and absolute discretion resolve such doubt by judicial determination which shall be binding on all parties claiming any interest in the Account. In such event all court costs, legal expenses, reasonable compensation of time expended by the Custodian in the performance of its duties, and other appropriate and pertinent expenses and costs shall be collected by the Custodian from the Custodial Account in accordance with Article VIII, Section 18.

(Custodial Agreement, Exh. 2, ¶ 7 (emphasis added).) The Custodial Agreement thus gives FMTC the right to let the court determine the proper beneficiaries of an IRA in cases of doubt, which is exactly what it did here.

Moreover, Third-Party Plaintiffs do not—and cannot—claim that FMTC owed them any fiduciary duty to:

- adjudicate competing ownership claims;

[6] FMTC notes that both the Customer and Custodial Agreements contain a Massachusetts choice-of-law provision. (*See* Exh. 1, p. 13; Exh. 2, ¶ 26). For purposes of this Motion only, the Court need not resolve which state's law governs, because New Mexico and Massachusetts law are substantively identical as to the elements of the relevant causes of action asserted against FMTC. FMTC therefore cites authority from both jurisdictions as to Counts I and II for convenience, without waiving the right to enforce the Massachusetts choice of law provision at a later stage, if needed.

- rely on a beneficiary's claimed entitlement when notified of a bona fide dispute regarding ownership of IRA assets; or

- to exceed or vary the scope of terms agreed-upon by the parties in the Custodial Agreement or the Customer Agreement.

A plaintiff must plead enough ***factual content*** to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Sanchez*, 173 F.4th at 1225, and to cross the line from "possibility and plausibility." *Iqbal*, 556 U.S at 678. The Third Party Complaint does not sufficiently plead the requisite factual content that would allow this court to conclude that they state a plausible claim for relief. As such, Count I should be dismissed under Rule 12(b)(6).

**2. Third-Party Plaintiffs Fail to State a Claim for Breach of Contract (Count II)**

The elements for a claim for breach of contract are: "(1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach." *Anderson Living Trust v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1030 (D.N.M. 2013) (citing *McCasland v. Prather*, 1978-NMCA-098, 92 N.M. 192); *see also Unum Grp. v. Benefit P'ship, Inc.*, 938 F. Supp. 2d 177, 185 (D. Mass. 2013) (citing *Singarella v. Boston*, 173 N.E.2d 290 (Mass. 1961)).

Third-Party Plaintiffs allege that the Custodial Agreement constituted a contract that existed between each of them and Fidelity. (*See* TPC ¶¶ 48–50.) They contend that FMTC breached that agreement by refusing to immediately fund their inherited IRAs and to produce certain documents. (*Id.* ¶¶ 50–51.)

That claim is subject to dismissal, however, because it is contradicted by the plain terms of the Custodial and Customer Agreements governing the relevant accounts. *See Matney v. Barrick*

*Gold of N. Am.*, 80 F.4th 1136, 1145 (10th Cir. 2023) ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."); *see also President and Fellows of Harvard Coll. v. Elmore*, 222 F. Supp. 3d 1050, 1059–60 (D.N.M. 2016) (granting motion to dismiss breach of contract claim based on contractual language that contradicted allegations in the complaint). As noted above, the Custodial Agreement provides that FMTC, as IRA Custodian, ***may*** distribute or transfer the IRA immediately following the death of the original depositor. It does not say the IRA Custodian ***must*** immediately transfer the IRA even if it is notified that the named beneficiaries' claim to the assets in the IRA is disputed. The Custodial Agreement further expressly states that FMTC can, in its sole and absolute discretion, resolve reasonable doubt about the IRA beneficiaries by seeking judicial determination, which is binding on all parties claiming an interest in the Account. (*See* Exh. 2, ¶ 7.)

The Customer Agreement, which Third-Party Plaintiffs agreed to be bound by, expressly permits Fidelity to restrict distributions from an IRA if put on reasonable notice that the ownership of the assets in the account is in dispute. It also contains no language requiring Fidelity to immediately fund inherited IRAs or immediately produce certain documents. (*See* Exh. 1, p. 13).

The Customer Agreement states, in relevant part, that Fidelity may place a hold on an account if put on "reasonable notice that the ownership of some or all of the assets in the account is in dispute." (Exh. 1, p. 13.) The Third Party Complaint concedes that Fidelity placed the restriction on Decedent's IRA following notice by Petitioner that she disputed ownership of the funds in the account. (TPC ¶ 17.) Consequently, there is no question, under the circumstances as plead in the Third Party Complaint, that Fidelity was entitled to restrict any distributions from the Decedent's IRA at least until ownership of the funds therein was legally established.

Because the plain language of the governing contracts at issue contradicts the allegations in the Third Party Complaint, Count II should be dismissed.

**3. The Complaint Fails to State a Claim for Violation of the UPA (Count III)**

There are three essential elements of a claim brought under the UPA: "(1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person." *Dollens v. Wells Fargo Bank, N.A.*, 2015-NMCA-096, ¶ 1.

According to Third-Party Plaintiffs, FMTC violated the UPA by "fail[ing] to live up to its representations as to what it offered as an IRA custodian" and failing to immediately transfer IRA funds to the adult children or turn over certain documents. (TPC ¶¶ 59–62.) Broadly stating each of these actions "is an unfair or deceptive trade practice by an entity doing business in the State of New Mexico" (*id.*) does not come close to meeting the *Twombly/Iqbal* pleading standard. *See Iqbal*, 556 U.S. at 663 (mere conclusory statements are insufficient to state a claim). As the Tenth Circuit recently reiterated: "In our Rule 12(b)(6) analysis, we 'disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.'" *Sanchez*, 173 F.4th at 1225 (citation omitted).

The general allegation that FMTC "failed to live up to its representations" is not sufficient. It does not identify any specific representations by FMTC that were allegedly false, misleading, or deceptive. *See Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 125 N.M. 748 ("The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services."). Moreover, Third-Party Plaintiffs do

not allege that any purported false or misleading statement was knowingly made in connection with the sale or loan of goods or service in the regular course of FMTC's business, or that the representation tended to or did deceive them.

For these reasons, the UPA claim in Count III fails. Accordingly, each of the three claims against FMTC fails to state a claim as a matter of law, and the Third Party Complaint should be dismissed under Rule 12(b)(6).

## V. CONCLUSION

For these reasons, FMTC respectfully requests that this Court grant this Motion under either Federal Rule of Civil Procedure 14 or Federal Rule of Civil Procedure 12(b)(6), and for any other relief the Court deems just and appropriate.

Dated: September 11, 2026

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN, & ROBB, P.A.

*/s/ Ian S. Carrillo*

Melanie B. Stambaugh
Kara B. Murphy
Ian S. Carrillo
Post Office Box 1888
Albuquerque, NM 87103
Telephone: (505) 765-5900
Facsimile (505) 768-7395
mstambaugh@rodey.com
kmurphy@rodey.com
icarrillo@rodey.com

***Attorneys for Third-Party Defendant Fidelity Management Trust Company***

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Friday, September 11, 2026, I filed the foregoing electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By *_/s/ Ian S. Carrillo_*
Ian S. Carrillo