CUSTODIAL AGREEMENT

# Fidelity IRA

Fidelity Individual Retirement Account
Under Section 408(a) of the Internal Revenue Code

The Depositor whose name appears on the accompanying Application is establishing a traditional individual retirement account (under Section 408(a) of the Internal Revenue Code) to provide for his or her retirement and for the support of his or her beneficiaries after death. The Custodian named on the accompanying Application has given the Depositor the Disclosure Statement required under the Income Tax Regulations under Section 1.408-6. The Depositor has deposited with the Custodian an initial contribution in cash, as set forth in the accompanying Application. The Depositor and the Custodian make the following Agreement:

## Article I

Except in the case of a rollover contribution described in section 402(c), 403(a)(4), 403(b)(8), 408(d)(3), or 457(e)(16), an employer contribution to a simplified employee pension plan as described in section 408(k), or a recharacterized contribution described in section 408A(d)(6), the Custodian will accept only cash contributions up to $3,000 per year for tax years 2002 through 2004. That contribution limit is increased to $4,000 for tax years 2005 through 2007 and $5,000 for 2008 and thereafter. For individuals who have reached the age of 50 before the close of the tax year, the contribution limit is increased to $3,500 per year for tax years 2002 through 2004, $4,500 for 2005, $5,000 for 2006 and 2007, and $6,000 for 2008 and thereafter. For tax years after 2008, the above limits will be increased to reflect a cost-of-living adjustment, if any.

## Article II

The Depositor's interest in the balance in the Custodial Account is nonforfeitable.

## Article III

**1.** No part of the Custodial Account funds may be invested in life insurance contracts, nor may the assets of the Custodial Account be commingled with other property except in a common trust fund or common investment fund (within the meaning of section 408(a)(5)).

**2.** No part of the Custodial Account funds may be invested in collectibles (within the meaning of section 408(m)) except as otherwise permitted by section 408(m)(3), which provides an exception for certain gold, silver, and platinum coins, coins issued under the laws of any state, and certain bullion.

## Article IV

**1.** Notwithstanding any provision of this agreement to the contrary, the distribution of the Depositor's interest in the Custodial Account shall be made in accordance with the following requirements and shall otherwise comply with section 408(a)(6) and the regulations thereunder, the provisions of which are herein incorporated by reference.

**2.** The Depositor's entire interest in the Custodial Account must be, or begin to be, distributed not later than the Depositor's required beginning date, April 1 following the calendar year in which the Depositor reaches age 70½. By that date, the Depositor may elect, in a manner acceptable to the Custodian, to have the balance in the Custodial Account distributed in:

(a) A single sum or
(b) Payments over a period not longer than the life of the Depositor or the joint lives of the Depositor and his or her designated beneficiary.

**3.** If the Depositor dies before his or her entire interest is distributed to him or her, the remaining interest will be distributed as follows:

(a) If the Depositor dies on or after the required beginning date and:
 (i) the designated beneficiary is the Depositor's surviving spouse, the remaining interest will be distributed over the surviving spouse's life expectancy as determined each year until such spouse's death, or over the period in paragraph (a)(iii) below if longer. Any interest remaining after the spouse's death will be distributed over such spouse's remaining life expectancy as determined in the year of the spouse's death and reduced by 1 for each subsequent year, or, if distributions are being made over the period in paragraph (a)(iii) below, over such period.
 (ii) the designated beneficiary is not the Depositor's surviving spouse, the remaining interest will be distributed over the beneficiary's remaining life expectancy as determined in the year following the death of the Depositor and reduced by 1 for each subsequent year, or over the period in paragraph (a)(iii) below if longer.
 (iii) there is no designated beneficiary, the remaining interest will be distributed over the remaining life expectancy of the Depositor as determined in the year of the Depositor's death and reduced by 1 for each subsequent year.

(b) If the Depositor dies before the required beginning date, the remaining interest will be distributed in accordance with (i) below or, if elected or there is no designated beneficiary, in accordance with (ii) below:
 (i) The remaining interest will be distributed in accordance with paragraphs (a)(i) and (a)(ii) above (but not over the period in paragraph (a)(iii), even if longer), starting by the end of the calendar year following the year of the Depositor's death. If, however, the designated beneficiary is the Depositor's surviving spouse, then this distribution is not required to begin before the end of the calendar year in which the Depositor would have reached age 70½. But, in such case, if the Depositor's surviving spouse dies before distributions are required to begin, then the remaining interest will be distributed in accordance with (a)(ii) above (but not over the period in paragraph (a)(iii), even if longer), over such spouse's designated beneficiary's life expectancy, or in accordance with (ii) below if there is no such designated beneficiary.
 (ii) The remaining interest will be distributed by the end of the calendar year containing the fifth anniversary of the Depositor's death.

**4.** If the Depositor dies before his or her entire interest has been distributed and if the designated beneficiary is not the Depositor's surviving spouse, no additional contributions may be accepted in the Account.

**5.** The minimum amount that must be distributed each year, beginning with the year containing the Depositor's required beginning date, is known as the "required minimum distribution" and is determined as follows:

(a) The required minimum distribution under paragraph 2(b) for any year, beginning with the year the Depositor reaches age 70½, is the Depositor's Account value at the close of business on December 31 of the preceding year divided by the distribution period in the uniform lifetime table in Regulations section 1.401(a)(9)-9. However, if the Depositor's designated beneficiary is his or her surviving spouse, the required minimum distribution for a year shall not be more than the Depositor's Account value at the close of business on December 31 of the preceding year divided by the number in the joint and last survivor table in Regulations section 1.401(a)(9)-9. The required minimum distribution for a year under this paragraph (a) is determined using the Depositor's (or, if applicable, the Depositor and spouse's) attained age (or ages) in the year.
(b) The required minimum distribution under paragraphs 3(a) and 3(b)(i) for a year, beginning with the year following the year of the Depositor's death (or the year the Depositor would have reached age 70½, if applicable under paragraph 3(b)(i)) is the Account value at the close of business on December 31 of the preceding year divided by the life expectancy (in the single life table in Regulations section 1.401(a)(9)-9) of the individual specified in such paragraphs 3(a) and 3(b)(i).
(c) The required minimum distribution for the year the Depositor reaches age 70½ can be made as late as April 1 of the following year. The required minimum distribution for any other year must be made by the end of such year.

**6.** The owner of two or more traditional IRAs may satisfy the minimum distribution requirements described above by taking from one traditional IRA the amount required to satisfy the requirement for another in accordance with the regulations under section 408(a)(6).

## Article V

**1.** The Depositor agrees to provide the Custodian with all information necessary to prepare any reports required by section 408(i) and Regulations sections 1.408-5 and 1.408-6.

Exhibit 2

**2.** The Custodian agrees to submit to the Internal Revenue Service (IRS) and Depositor the reports prescribed by the IRS.

## Article VI

Notwithstanding any other articles which may be added or incorporated, the provisions of Articles I through III and this sentence will be controlling. Any additional articles inconsistent with section 408(a) and the related regulations will be invalid.

## Article VII

This agreement will be amended as necessary to comply with the provisions of the Code and the related regulations. Other amendments may be made with the consent of the Depositor and the Custodian.

## Article VIII

**1.** Definitions. The following definitions shall apply to terms used in this Agreement:

(a) "Account" or "Custodial Account" means the custodial account established hereunder for the benefit of the Depositor (or following the death of the Depositor, the Beneficiary).

(b) "Agreement" means the Fidelity IRA Custodial Agreement and Disclosure Statement, including the information and provisions set forth in any Application that goes with this Agreement, as may be amended from time to time. This Agreement, including the Account Application and any designation of Beneficiary filed with the Custodian, may be proved either by an original copy or by a reproduced copy thereof, including, without limitation, a copy reproduced by photocopying, facsimile transmission, electronic record or electronic imaging.

(c) "Account Application" or "Application" shall mean the Application and the accompanying instructions, as may be amended from time to time, by which this Agreement is established between the Depositor (or following the death of the Depositor, the Beneficiary) and the Custodian. The statements contained therein shall be incorporated into this Agreement.

(d) "Authorized Agent" means the person or persons authorized by the Depositor (or following the death of the Depositor, the Beneficiary) in a form and manner acceptable to the Custodian to purchase or sell Shares or Other Funding Vehicles in the Depositor's (or following the death of the Depositor, the Beneficiary's) Account and to perform the duties and responsibilities on behalf of the Depositor (or following the death of the Depositor, the Beneficiary) as set forth under this Agreement. The Custodian shall have no duty to question the authority of any such Authorized Agent.

(e) "Beneficiary" shall mean the person(s) or entity (including a trust or estate, in which case the term may mean the trustee or personal representative acting in their fiduciary capacity) designated as such by the Depositor (or, following the death of the Depositor, designated as such by a Beneficiary) (i) in a manner acceptable to and filed with the Custodian pursuant to Article VIII, Section 7 of this Agreement, or (ii) pursuant to the default provisions of Article VIII, Section 7 of this Agreement.

(f) "Code" shall mean the Internal Revenue Code of 1986, as amended.

(g) "Company" shall mean FMR LLC, a Delaware corporation, or any successor or affiliate thereof to which FMR LLC may, from time to time, delegate or assign any or all of its rights or responsibilities under this Agreement.

(h) "Conversion Amount" shall mean all or any part of a distribution from an IRA other than a Roth IRA (including a SEP IRA, SARSEP IRA, or a SIMPLE IRA) deposited in a Roth IRA.

(i) "Custodian" shall mean Fidelity Management Trust Company or its successor(s) or affiliates. Custodian shall include any agent of the Custodian as duly appointed by the Custodian.

(j) "Depositor" means the person named in the Account Application establishing an Account for the purpose of making contributions to an individual retirement account as provided for under the Code. This term shall not include a Beneficiary who establishes an Account with the Custodian after the death of the Depositor.

(k) "Investment Company Shares" or "Shares" shall mean shares of stock, trust certificates, or other evidences of interest (including fractional shares) in any corporation, partnership, trust, or other entity registered under the Investment Company Act of 1940 for which Fidelity Management & Research Company, a Massachusetts corporation, or its successors or affiliates (collectively, for purposes of this Agreement "FMR") serves as investment advisor.

(l) "Money Market Shares" shall mean any Investment Company Shares which are issued by a money market mutual fund.

(m) "Other Funding Vehicles" shall include (i) all marketable securities traded over the counter or on a recognized securities exchange which are eligible for registration on the book entry system maintained by the Depository Guaranty Trust Company ("DTC") or its successors; (ii) if permitted by the Custodian, including interest bearing accounts, and (iii) such other non-DTC eligible assets (but not including futures contracts) which are permitted to be acquired under a custodial account pursuant to Section 408(a) of the Code and which are acceptable to the Custodian. Notwithstanding the above, the Custodian reserves the right to refuse to accept and hold any specific asset. All assets of the Custodial Account shall be registered in the name of the Custodian or its nominee, but such assets shall generally be held in an Account for which the records are maintained on a proprietary recordkeeping system of the Company.

**2. Investment of Contributions.** Contributions to the Account may only be invested in Investment Company Shares and Other Funding Vehicles. The Custodian reserves the right to refuse to accept and hold any specific asset, including tax-free investment vehicles. Contributions shall be invested as follows:

(a) *General.* Contributions (including transfers of assets) will be invested in accordance with the Depositor's (the Authorized Agent's or, following the death of the Depositor, the Beneficiary's) instructions in the Application, or as the Depositor (the Authorized Agent, or following the death of the Depositor, the Beneficiary) directs in a form and manner acceptable to the Custodian, and with subsequent instructions given by the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary), as the case may be to the Custodian in a form and manner acceptable to the Custodian. By giving such instructions to the Custodian, such person will be deemed to have acknowledged receipt of the then-current prospectus or disclosure document for any Investment Company Shares or Other Funding Vehicles in which the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) directs the Custodian to invest assets in the Account. All charges incidental to carrying out such instructions shall be charged and collected in accordance with Article VIII, Section 18.

(b) *Initial Contribution.* The Custodian will invest all contributions (including transfers of assets) promptly after the receipt thereof. However, the Custodian shall not be obligated to invest the Depositor's initial contribution (or the Beneficiary's initial transfer of assets) to this Custodial Account as indicated on the Application, until at least seven (7) calendar days have elapsed from the date of acceptance of the Application by or on behalf of the Custodian. The Depositor (or following the death of the Depositor, the Beneficiary) shall be deemed to have received a copy of the Disclosure Statement which accompanies this Agreement unless a request for revocation is made to the Custodian within seven (7) calendar days following the acceptance of the Application by or on behalf of the Custodian as evidenced by notification to the Depositor (or following the death of the Depositor, the Beneficiary) in a form and manner acceptable to the Custodian.

(c) *Incomplete, Unclear or Unacceptable Instructions.* If the Custodial Account at any time contains an amount as to which investment instructions in accordance with this Section 2 have not been received by the Custodian, or if the Custodian receives instructions as to investment selection or allocation which are, in the opinion of the Custodian, incomplete, not clear or otherwise not acceptable, the Custodian may request additional instructions from the Depositor (the Authorized Agent or the Beneficiary). Pending receipt of such instructions any amount may (i) remain uninvested pending receipt by the Custodian of clear investment instructions from the Depositor (the Authorized Agent or the Beneficiary), (ii) be invested in Money Market Shares or other core account investment vehicle, or (iii) be returned to the Depositor (or following the death of the Depositor, the Beneficiary) as the case may be, and any other investment may remain unchanged. The Custodian shall not be liable to anyone for any loss resulting from delay in investing such amount or in implementing such instructions. Notwithstanding the above, the Custodian may, but need not, for administrative convenience maintain a balance of up to $100 of uninvested cash in the Custodial Account.

(d) *Minimum Investment.* Any other provision herein to the contrary notwithstanding, the Depositor (the Authorized Agent or the Beneficiary) may not direct that any part or all of the Custodial Account be invested in Investment Company Shares or Other Funding Vehicles unless the aggregate amount to be invested is at least such amount as the Custodian shall establish from time to time.

(e) *No Duty.* The Custodian shall not have any duty to question the directions of the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) in the investment or ongoing management of the Custodial Account or to advise the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) regarding the purchase, retention, withdrawal, or sale of assets credited to the Custodial Account. The Custodian, or any of its affiliates, successors, agents or assigns, shall not be liable for any loss which results from the Depositor's (the Authorized Agent's or the Beneficiary's) exercise of control (whether by his or her action or inaction) over the Custodial Account, or any loss which results from any directions received from the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) with respect to IRA assets.

**3. Contributions by Divorced or Separated Spouses.** All alimony and separate maintenance payments received by a divorced or separated spouse, and taxable under Section 71 of the Code, shall be considered compensation for purposes of computing the maximum annual contri-

bution to the Custodial Account, and the limitations for contributions by a divorced or separated spouse shall be the same as for any other individual.

**4. Contribution Deadlines.** The following contribution deadlines generally apply to certain transactions within your IRA.

(a) *Contributions.* The last day to make annual contributions (including catch-up contributions) for a particular tax year is the deadline for filing the Depositor's federal income tax return (not including extensions), or such later date as may be determined by the Department of the Treasury or the Internal Revenue Service for the taxable year for which the contribution relates; provided, however, the Depositor (or the Depositor's Authorized Agent) designates, in a form and manner acceptable to the Custodian, the contribution as a contribution for such taxable year.

(b) *Recharacterizations.* A contribution that constitutes a recharacterization of a prior IRA or Roth IRA contribution for a particular tax year must be made by the deadline for filing the Depositor's income tax return (including extensions) for such tax year or such later date as authorized by the IRS.

The Custodian will not be responsible under any circumstances for the timing, purpose or propriety of any contribution nor shall the Custodian incur any liability for any tax, penalty, or loss imposed on account of any contribution.

**5. Rollover Contributions.** The Custodian will accept for the Depositor's Custodial Account in a form and manner acceptable to the Custodian all rollover contributions which consist of cash, and it may, but shall be under no obligation to, accept all or any part of any other property permitted as an investment under Code Section 408. The Depositor (or the Depositor's Authorized Agent) shall designate in a form and manner acceptable to the Custodian each rollover contribution as such to the Custodian, and by such designation shall confirm to the Custodian that a proposed rollover contribution qualifies as a rollover contribution within the meaning of Sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3), and/or 457(e)(16) of the Code. The Depositor (or the Depositor's Authorized Agent) shall provide any information the Custodian may require to properly allocate rollover contributions to the Depositor's Account(s). Submission by or on behalf of a Depositor of a rollover contribution consisting of assets other than cash or property permitted as an investment under this Article VIII shall be deemed to be the instruction of the Depositor to the Custodian that, if such rollover contribution is accepted, the Custodian will use its best efforts to sell those assets for the Depositor's Account, and to invest the proceeds of any such sale in accordance with Section 2. The Custodian shall not be liable to anyone for any loss resulting from such sale or delay in effecting such sale; or for any loss of income or appreciation with respect to the proceeds thereof after such sale and prior to investment pursuant to Section 2; or for any failure to effect such sale if such property proves not readily marketable in the ordinary course of business. All brokerage and other costs incidental to the sale or attempted sale of such property will be charged to the Custodial Account in accordance with Article VIII, Section 18. The Custodian will not be responsible for any losses the Depositor may incur as a result of the timing of any rollover from another trustee or custodian that is due to circumstances reasonably beyond the control of the Custodian. It shall be the Depositor's responsibility to ensure that any minimum distribution required by sections 408(a)(6) and 401(a)(9) of the Code and applicable regulations is made prior to giving the Custodian such rollover instructions.

**6. Reinvestment of Earnings.** In the absence of other instructions pursuant to Section 2, distributions of every nature received in respect of the assets in a Depositor's (or following the death of the Depositor, the Beneficiary's) Custodial Account shall be reinvested as follows:

(a) in the case of a distribution in respect of Investment Company Shares which may be received, at the election of the shareholder, in cash or in additional Shares of an Investment Company, the Custodian shall elect to receive such distribution in additional Investment Company Shares;

(b) in the case of a cash distribution which is received in respect of Investment Company Shares, the Custodian shall reinvest such cash in additional Shares of that Investment Company;

(c) in the case of any other distribution of any nature received in respect of assets in the Custodial Account, the distribution shall be liquidated to cash, if necessary, and shall be reinvested in accordance with the Depositor's (the Authorized Agent's, or following the death of the Depositor, the Beneficiary's) instructions pursuant to Section 2.

**7. Designation of Beneficiary.**

A Depositor may designate a Beneficiary for his or her Account as follows:

(a) *General.* A Depositor (or following the death of the Depositor, the Beneficiary) may designate a Beneficiary or Beneficiaries at any time, and any such designation may be changed or revoked at any time, by a designation executed by the Depositor (or following the death of the Depositor, the Beneficiary) in a form and manner acceptable to, and filed with, the Custodian; provided, however, that such designation, or change or revocation of a prior designation, shall not be effective unless it is received and accepted by the Custodian no later than nine months after the death of the Depositor (or following the death of the Depositor, the Beneficiary), and provided, further, that such designation, change or revocation shall not be effective as to any assets distributed or transferred out of the Account (including a transfer to an inherited IRA or Beneficiary Distribution Account) prior to the Custodian's receipt and acceptance of such designation, change, or revocation. Subject to Sections 9 and 10 below, the Custodian may distribute or transfer any portion of the Account immediately following the death of the Depositor (or following the death of the Depositor, the Beneficiary) under the provisions of the designation then on file with the Custodian, and such distribution or transfer discharges the Custodian from any and all claims as to the portion of the Account so distributed or transferred. The latest such designation or change or revocation shall control except as determined by applicable law.
If the Depositor had not by the date of his or her death properly designated a Beneficiary in accordance with the preceding sentence, or if no designated primary or contingent Beneficiary survives the Depositor, the Depositor's Beneficiary shall be his or her surviving spouse, but if he or she has no surviving spouse, his or her estate. If the Depositor designates more than one primary or contingent Beneficiary but does not specify the percentages to which such Beneficiary(ies) is entitled, payment will be made to the surviving Beneficiary(ies),
as applicable, in equal shares. Unless otherwise designated by the Depositor in a form and manner acceptable to the Custodian, if a primary or contingent Beneficiary designated by the Depositor predeceases the Depositor, the Shares and Other Funding Vehicles for which that deceased Beneficiary is entitled will be divided equally among the surviving primary and contingent Beneficiary(ies), as applicable. If the Beneficiary is not a U.S. citizen or other U.S. person (including a resident alien individual) at the time of the Depositor's death, the distribution options and tax treatment available to such Beneficiary may be more restrictive. Unless otherwise designated by the Depositor in a form and manner acceptable to the Custodian, if there are no primary Beneficiaries living at the time of the Depositor's death, payment of the Depositor's Account upon his or her death will be made to the surviving contingent Beneficiaries designated by the Depositor. If a Beneficiary does not predecease the Depositor but dies before receiving his or her entire interest in the Custodial Account, his or her remaining interest in the Custodial Account shall be paid to a Beneficiary or Beneficiaries designated by such Beneficiary(ies) as his or her successor Beneficiary in a form and manner acceptable to, and filed with, the Custodian; provided, however, that such designation must be received and accepted by the Custodian in accordance with this section. If no proper designation has been made by such Beneficiary in accordance with this section, distributions will be made to such Beneficiary's estate. Notwithstanding any provision of this Agreement to the contrary, for purposes of distributions calculated and requested pursuant to Article IV, the designated beneficiary within the meaning of Section 401(a)(9)(E) of the Code shall be the individual designated as such by the Depositor. Notwithstanding any provision of this Agreement to the contrary, unless otherwise designated by the Depositor (or following the death of the Depositor, by a Beneficiary) in a form and manner acceptable to the Custodian, when used in this Agreement or in any designation of Beneficiary received and accepted by the Custodian, the term "per stirpes" shall be construed as follows: if any primary or contingent Beneficiary, as applicable, does not survive the Depositor (or following the death of the Depositor, the Beneficiary), but leaves surviving descendants, any share otherwise payable to such beneficiary shall instead be paid to such beneficiary's surviving descendants by right of representation. In all cases, the Custodian shall be authorized to rely on any representation of facts made by the Depositor, the executor or administrator of the estate of the Depositor, any Beneficiary, the executor or administrator of the estate of any Beneficiary, or any other person deemed appropriate by the Custodian in determining the identity of unnamed Beneficiaries.

(b) *Minors.* If a distribution upon the death of the Depositor (or following the death of the Depositor, the Beneficiary) is payable to a person known by the Custodian to be a minor or otherwise under a legal disability, the Custodian may, in its absolute discretion, make all, or any part of the distribution to (i) a parent of such person, (ii) the guardian, conservator, or other legal representative, wherever appointed, of such person, (iii) a custodial account established under a Uniform Gifts to Minors Act, Uniform Transfers to Minors Act, or similar act, (iv) any person having control or custody of such person, or (v) to such person directly. Notwithstanding anything in this Agreement to the contrary, if the Account is established for a minor under the provisions of either the Uniform Gifts to Minors Act or the Uniform Transfers to Minors Act (to the extent permitted by the Custodian), the beneficiary of such Account while so established and maintained shall be the minor's estate or as otherwise determined in accordance with the applicable state Uniform Gifts to Minors Act or Uniform Transfers to Minors Act.

(c) *QTIPs and QDOTs.* A Depositor (or following the death of the Depositor, the Beneficiary) may designate as Beneficiary of his or her Account a trust for the benefit of his or her surviving spouse that is intended to satisfy the conditions of Sections 2056(b)(7) or 2056A of the Code (a "Spousal Trust"). In that event, if the Depositor (or, following the death of the Depositor, the Beneficiary) is survived by his or her spouse, the following provisions shall apply to the Account, from and after the

death of the Depositor (or following the death of the Depositor, the Beneficiary) until the death of the Depositor's (or following the death of the Depositor, the Beneficiary's) surviving spouse: (i) all of the income of the Account shall, at the direction of the trustee(s) of the Spousal Trust, be paid to the Spousal Trust annually or at more frequent intervals, and (ii) no person shall have the power to appoint any part of the Account to any person other than the Spousal Trust. To the extent permitted by Section 401(a)(9) of the Code, as determined by the trustee(s) of the Spousal Trust, the surviving spouse of a Depositor who has designated a Spousal Trust as his or her Beneficiary may be treated as his or her "designated beneficiary" for purposes of the distribution requirements of that Code section. The Custodian shall have no responsibility to determine whether such treatment is appropriate.

(d) *Judicial Determination.* Anything to the contrary herein notwithstanding, in the event of reasonable doubt respecting the proper course of action to be taken, the Custodian may in its sole and absolute discretion resolve such doubt by judicial determination which shall be binding on all parties claiming any interest in the Account. In such event all court costs, legal expenses, reasonable compensation of time expended by the Custodian in the performance of its duties, and other appropriate and pertinent expenses and costs shall be collected by the Custodian from the Custodial Account in accordance with Article VIII, Section 18.

(e) *No Duty.* The Custodian shall not have any duty to question the directions of a Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) as to the time(s) and amount(s) of distributions from the Custodial Account, or to advise him or her regarding the compliance of such distributions with Section 408(a)(6), Section 401(a)(9), Section 2056(b)(7) or Section 2056A of the Code.

**8. Payroll Deduction.** Subject to approval of the Custodian, a Depositor may choose to have contributions to his or her Custodial Account made through payroll deduction if the Account is maintained as part of a program or plan sponsored by the Depositor's employer, or if the employer otherwise agrees to provide such service. In order to establish payroll deduction, the Depositor must authorize his or her employer to deduct a fixed amount or percentage from each pay period's salary up to the maximum annual IRA contribution limit per year, unless such contributions are being made pursuant to a Simplified Employee Pension Plan described under Section 408(k) of the Code, in which case, contributions can be made up to the maximum annual percentage limit of the Depositor's earned compensation (subject to the contribution limits as described in Section 402(h)(2) and the compensation limits as described in Section 401(a)(17), 404(l) and 408(k) of the Code). Contributions to a Custodial Account of the Depositor's spouse may be made through payroll deduction if the employer authorizes the use of payroll deductions for such contributions, but such contributions must be made to a separate Account maintained for the benefit of the Depositor's spouse. The Custodian shall continue to receive for the Depositor's Account payroll deduction contributions until such time as the Depositor's instruction to his or her employer (with reasonable advance notice) causes such contributions to be modified or to cease.

**9. Transfers to or from the Account.** Assets held on behalf of the Depositor (or following the death of the Depositor, the Beneficiary) in another IRA may be transferred by the trustee or custodian thereof directly to the Custodian, in a form and manner acceptable to the Custodian, to be held in the Custodial Account for the Depositor (or following the death of the Depositor, the Beneficiary) under this Agreement. The Custodian will not be responsible for any losses the Depositor (or following the death of the Depositor, the Beneficiary) may incur as a result of the timing of any transfer from another trustee or custodian that are due to circumstances reasonably beyond the control of the Custodian. The Depositor (or following the death of the Depositor, the Beneficiary) shall be responsible for ensuring that any transfer of another IRA by the trustee or custodian thereof directly to the Custodian is in compliance with the terms and conditions of the instrument governing the IRA of the transferor trustee or custodian, the Code and any related rules, regulations and guidance issued by the Internal Revenue Service.

Assets held on behalf of the Depositor (or following the death of the Depositor, the Beneficiary) in the Account may be transferred directly to a trustee or custodian of another IRA established for the Depositor (or following the death of the Depositor, the Beneficiary), if so directed by the Depositor (or following the death of the Depositor, the Beneficiary) in a form and manner acceptable to the Custodian; provided, however, that it shall be the Depositor's (or following the death of the Depositor, the Beneficiary's) responsibility to ensure that the transfer is permissible and any minimum distributions required by Sections 408(a)(6) and 401(a)(9) of the Code and applicable regulations is satisfied.

**10. Distributions from the Account.** Distributions from the Account will be made only upon the request of the Depositor (or, with the prior consent of the Custodian, the Authorized Agent, or, following the death of the Depositor, the Beneficiary) to the Custodian in such form and in such manner as is acceptable to the Custodian, and will generally be included in the gross income of the recipient to the extent required by law. Notwithstanding this Section 10 and Section 17 below, the Custodian is empowered to make distributions absent the Depositor's (the Authorized Agent or after the death of the Depositor, the Beneficiary) direction if directed to do so pursuant to a court order or levy of any kind, or in the event the Custodian resigns or is removed as Custodian. In such instance, neither the Custodian nor the Company shall in any event incur any liability for acting in accordance with such court order or levy, or with the procedures for resignation or removal in Section 24 below. For distributions requested pursuant to Article IV, life expectancy shall be calculated based on information provided by the Depositor (or with the prior consent of the Custodian, the Authorized Agent or, following the death of the Depositor, the Beneficiary) using any applicable distribution period from tables prescribed by the IRS in regulations or other guidance. The Custodian shall be under no duty to perform any calculations in connection with distributions requested pursuant to Article IV, unless specifically required to by the IRS. Notwithstanding the foregoing, at the direction of the Depositor (or following the death of the Depositor, the Beneficiary), and with the consent of the Custodian, the Custodian may perform calculations in connection with such distributions. The Custodian shall not incur any liability for errors in any such calculations as a result of reliance on information provided by the Depositor (or with the prior consent of the Custodian, the Authorized Agent or, following the death of the Depositor, the Beneficiary). Without limiting the generality of the foregoing, the Custodian is not obligated to make any distribution, including a minimum required distribution as specified in Article IV above, absent a specific direction from the Depositor (or with the prior consent of the Custodian, the Authorized Agent or, following the death of the Depositor, the Beneficiary) to do so in a form and manner acceptable to the Custodian, and the Custodian may rely, and shall be fully protected in so relying, upon any such direction. The Custodian will not, under any circumstances, be responsible for the timing, purpose or propriety of any distribution made hereunder, nor shall the Custodian incur any liability or responsibility for any tax or penalty imposed on account of any distribution or failure to make a required distribution. Notwithstanding anything herein to the contrary,

on or before December 31, 2003, a Beneficiary receiving distributions pursuant to Paragraph 3(b)(ii) of Article IV of this Custodial Agreement may generally begin taking distributions over the Beneficiary's remaining life expectancy in accordance with Section 401(a)(9) of the Code and related regulations.

**11. Conversion of Distributions from the Account.** Generally, the Depositor may convert any or all distributions from the Account, for deposit into a Roth IRA ("Conversion Amount(s)"). However, any minimum distribution from the Account required by Sections 408(a)(6) and 401(a)(9) of the Code and applicable regulations for the year of the conversion cannot be converted to a Roth IRA. The Depositor (or the Depositor's Authorized Agent) shall designate in a form and manner acceptable to the Custodian each Conversion Amount as such to the Custodian and by such designation shall confirm to the Custodian that a proposed Conversion Amount qualifies as a conversion within the meaning of Sections 408A(c)(3), 408A(d)(3) and 408A(e) of the Code, except that any conversion contribution shall not be considered a rollover contribution for purposes of Section 408(d)(3)(B) of the Code relating to the one rollover per year rule. Conversions must generally be made by December 31 of the year to which the conversion relates. Conversions made via a 60-day rollover must be deposited in a Roth IRA within 60 days.

**12. Recharacterization of Contributions.** Annual contributions or conversion contributions held on behalf of the Depositor in a Roth IRA may be transferred ("recharacterized") via a trustee-to-trustee transfer to the Custodian, in a form and manner acceptable to the Custodian, to be held in the Custodial Account for the Depositor under this Agreement. The Custodian will not be responsible for any penalties or losses the Depositor may incur as a result of the timing of any such recharacterization from another trustee or custodian that are due to circumstances reasonably beyond the control of the Custodian.

Annual contributions held on behalf of the Depositor in the Account may be transferred ("recharacterized") via a trustee-to-trustee transfer to a trustee or custodian of a Roth IRA established for the Depositor, if so directed by the Depositor (or the Depositor's Authorized Agent) in a form and manner acceptable to the Custodian. It shall be the Depositor's responsibility in all cases to ensure that the recharacterization is permissible and satisfies the requirements of Code Section 408A and any related regulations, and any other applicable guidance issued by the Internal Revenue Service.

A contribution that constitutes a recharacterization of a prior contribution or conversion must be made by the deadline for filing the Depositor's income tax return for the year the contribution or conversion, as applicable, relates or such later date as authorized by the IRS.

**13. Actions in the Absence of Specific Instructions.** If the Custodian receives no response to communications sent to the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) at the Depositor's (the Authorized Agent or following the death of the Depositor, the Beneficiary's) last known address as shown in the records of the Custodian, or if the Custodian determines, on the basis of evidence satisfactory to it, that the Depositor (or following the death of the Depositor, the Beneficiary) is legally

incompetent, the Custodian thereafter may make such determinations with respect to distributions, investments, and other administrative matters arising under this Agreement as it considers reasonable, notwithstanding any prior instructions or directions given by or on behalf of the Depositor (or following the death of the Depositor, the Beneficiary). Any determinations so made shall be binding on all persons having or claiming any interest under the Custodial Account, and the Custodian shall not incur any obligation or liability for any such determination made in good faith, for any action taken in pursuance thereof, or for any fluctuations in the value of the Account in the event of a delay resulting from the Custodian's good faith decision to await additional information or evidence.

**14. Instructions, Notices, and Communications.**
All instructions, notices or communications, written or otherwise, required to be given by the Custodian to the Depositor (or following the death of the Depositor, the Beneficiary) shall be deemed to have been given when delivered or provided to the last known address, including an electronic address of the Depositor or the Beneficiary in the records of the Custodian. All instructions, notices, or communications, written or otherwise, required to be given by the Depositor (or following the death of the Depositor, the Beneficiary) to the Custodian shall be mailed, delivered or provided to the Custodian at its designated mailing address, including an electronic address if authorized by the Custodian, as specified on the Application or Account statement (or such other address as the Custodian may specify), and no such instruction, notice, or communication shall be effective until the Custodian's actual receipt thereof.

**15. Effect of Instructions, Notices, and Communications.**

(a) *General.* The Custodian shall be entitled to rely conclusively upon, and shall be fully protected in any action or non-action taken in good faith in reliance upon, any instructions, notices, communications or instruments, written or otherwise, believed to have been genuine and properly executed. Any such notification may be proved by original copy or reproduced copy thereof, including, without limitation, a copy produced by photocopying, facsimile transmission, electronic record or electronic imaging. For purposes of this Agreement, the Custodian may (but is not required to) give the same effect to a telephonic instruction or an instruction received through electronic commerce as it gives to a written instruction, and the Custodian's action in doing so shall be protected to the same extent as if such telephonic or electronic commerce instructions were, in fact, a written instruction. Any such instruction may be proved by audio recorded tape, data file or electronic record maintained by the Custodian, or other means acceptable to the Custodian, as the case may be.

(b) *Incomplete or Unclear Instructions.* If the Custodian receives instructions or other information relating to the Depositor's (or following the death of the Depositor, the Beneficiary's) Custodial Account which are, in the opinion of the Custodian, incomplete or not clear, the Custodian may request instructions or other information from the Depositor (the Authorized Agent, or following the death of the Depositor, the Beneficiary). Pending receipt of any such instructions or other information, the Custodian shall not be liable to anyone for any loss resulting from any delay, action or inaction on the part of the Custodian. In all cases, the Custodian shall not have any duty to question any such instructions or information from a Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) relating to his or her Custodial Account or to otherwise advise the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) regarding any matter relating thereto.

**16. Tax Matters.**

(a) *General.* The Custodian shall submit required reports to the Internal Revenue Service and the Depositor (the Authorized Agent, or, following the death of the Depositor, the Beneficiary); provided, however, that such individual shall prepare any return or report required in connection with maintaining the Account, or as a result of liability incurred by the Account for tax on unrelated business taxable income.

(b) *Annual Report.* As required by the Internal Revenue Service, the Custodian shall deliver to the Depositor (or following the death of the Depositor, the Beneficiary) a report(s) of certain transactions effected in the Custodial Account and the fair market value of the assets of the Custodial Account as of the close of the prior calendar year. Unless the Depositor (the Authorized Agent or following the death of the Depositor, the Beneficiary) sends the Custodian written objection to a report within ninety (90) days of receipt, the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) shall be deemed to have approved of such report, and the Custodian and the Company, and their officers, employees and agents shall be forever released and discharged from all liability and accountability to anyone with respect to their acts, transactions, duties and responsibilities as shown on or reflected by such report(s). The Company shall not incur any liability in the event the Custodian does not satisfy its obligations as described herein.

(c) *Tax Withholding.* Any distributions from the Custodial Account may be made by the Custodian net of any required tax withholding. If permitted by the Custodian, any distributions from the Custodial Account may be made net of any voluntary tax withholding requested by the Depositor (or, if permitted by the Custodian, the Authorized Agent, or, following the death of the Depositor, the Beneficiary). The Custodian shall be under no duty to withhold any excise penalty which may be due as a result of any transaction in the Custodial Account.

**17. Spendthrift Provision.** Subject to Section 10 above, any interest in the Account shall generally not be transferred or assigned by voluntary or involuntary act of the Depositor (or, following the death of the Depositor, the Beneficiary) or by operation of law; nor shall any interest in the Account be subject to alienation, assignment, garnishment, attachment, receivership, execution or levy except as required by law. However, this Section 17 shall not in any way be construed to, and the Custodian is in no way obligated or expected to, commence or defend any legal action in connection with this Agreement or the Custodial Account. Commencement of any such legal action or proceeding or defense shall be the sole responsibility of the Depositor (or following the death of the Depositor, the Beneficiary) unless agreed upon by the Custodian and the Depositor (or following the death of the Depositor, the Beneficiary), and unless the Custodian is fully indemnified for doing so to the Custodian's satisfaction. Notwithstanding the foregoing, in the event of a property settlement between a Depositor (or following the death of the Depositor, the Beneficiary) and his or her former spouse pursuant to which the transfer of a Depositor's (or following the death of the Depositor, the Beneficiary's) interest hereunder, or a portion thereof, is incorporated in a divorce decree or in an instrument, written or otherwise, incident to such divorce or legal separation, then the interest so decreed by a Court to be the property of such former spouse shall be transferred to a separate Custodial Account for the benefit of such former spouse, in accordance with Section 408(d)(6) of the Code and Section 10 above. In the event the Custodian is directed to distribute assets from the Custodial Account pursuant to a court order or levy, the Custodian shall do so in accordance with such order or levy and Section 10 above, and the Custodian shall not incur any liability for distributing such assets of the Account.

**18. Fees and Expenses.**

(a) *General.* The fees of the Custodian for performing its duties hereunder shall be in such amount as it shall establish from time to time, as communicated on the Schedule of Fees which accompanies this Agreement, or in some other manner acceptable to the Custodian. All such fees, as well as expenses (such as, without limitation, brokerage commissions upon the investment of funds, fees for special legal services, taxes levied or assessed, or expenses in connection with the liquidation or retention of all or part of a rollover contribution), shall be collected by the Custodian from cash available in the Custodial Account, or if insufficient cash shall be available, by sale, or withdrawal of sufficient assets in the Custodial Account and application of the sales proceeds, or funds withdrawn, to pay such fees and expenses. Alternatively, but only with the consent of the Custodian, fees and expenses may be paid directly to the Custodian by the Depositor (the Authorized Agent or following the death of the Depositor, the Beneficiary) by separate check.

(b) *Advisor Fees.* The Custodian shall, upon direction from the Depositor (or, following the death of the Depositor, the Beneficiary), disburse from the Custodial Account payment to the Depositor's (or, following the death of the Depositor, the Beneficiary's) registered investment advisor any fees for financial advisory services rendered with regard to the assets held in the Account. Any such direction must be provided in a form and manner acceptable to the Custodian. The Custodian shall not incur any liability for executing such direction. The Custodian shall be entitled to rely conclusively upon, and shall be fully protected in any action or non-action taken in full faith reliance upon any such fee disbursement direction.

(c) *Sale of Assets/Withdrawal of Funds.* Whenever it shall be necessary in accordance with this Section 18 to sell assets, or withdraw funds, in order to pay fees or expenses, the Custodian may sell, or withdraw, any or all of the assets credited to the Custodial Account at that time, and shall invest the portion of the sales proceeds/funds withdrawn remaining after collection of the applicable fees and expenses therefrom in accordance with Section 2. The Company or Custodian shall not incur any liability on account of its sale or retention of assets under such circumstances.

**19. Escrow.** With the consent of the Custodian, the Custodial Account may serve as an escrow arrangement to hold restricted distributions from defined benefit plans pursuant to applicable Income Tax Regulations. In such event, the Custodian will act in accordance with an escrow agreement acceptable to it and pursuant to which it will only act upon the direction of the trustee of the distributing plan with respect to distributions from the Account. Such agreement will remain in place until the trustee of the distributing plan releases the Custodian from such escrow agreement.

**20. Voting with Respect to Securities.** The Custodian shall deliver to the Depositor (or, following the death of the Depositor, the Beneficiary) all prospectuses and proxies that may come into the Custodian's possession by reason of its holding of Investment Company Shares or Other Funding Vehicles in the Custodial Account. The Depositor (the Authorized Agent, or, following the death of the Depositor, the Beneficiary) may direct the Custodian as to the manner in which any Investment Company Shares or Other Funding Vehicles held in the Custo-

dial Account shall be voted with respect to any matters as to which the Custodian as holder of record is entitled to vote, coming before any meeting of shareholders of the corporation which issued such securities, or of holders of interest in the Investment Company or corporation which issued such Investment Company Shares or Other Funding Vehicles. All such directions shall be in a form and manner acceptable to the Custodian, and delivered to the Custodian or its designee within the time prescribed by it. The Custodian shall vote only those securities and Investment Company Shares with respect to which it has received timely directions from the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary); provided however, that by establishing (or having established) the Custodial Account the Depositor (or following the death of the Depositor, the Beneficiary) authorizes the Custodian to vote any Investment Company Shares held in the Custodial Account on the applicable record date, for which no timely instructions are received, in the same proportions as the Custodian has been instructed to vote the Investment Company Shares held in the Custodial Accounts for which it has received timely instructions, but effective solely with respect to votes before January 1, 2003, only to the extent that such vote is necessary to establish a quorum.

**21. Limitations on Custodial Liability and Indemnification.** Neither the Custodian, the Company nor any agent or affiliate thereof provides tax or legal advice. Depositors, Beneficiaries and Authorized Agents are strongly encouraged to consult with their attorney or tax adviser with regard to their specific situation. The Depositor (or following the death of the Depositor, the Beneficiary) and the Custodian intend that the Custodian shall have and exercise no discretion, authority, or responsibility as to any investment in connection with the Account and the Custodian shall not be responsible in any way for the purpose, propriety or tax treatment of any contribution, or of any distribution, or any other action or nonaction taken pursuant to the Depositor's direction (or that of the Authorized Agent or, following the death of the Depositor, the Beneficiary). The Depositor (or following the death of the Depositor, the Beneficiary) who directs the investment of his or her Account shall bear sole responsibility for the suitability of any directed investment and for any adverse consequences arising from such an investment, including, without limitation, the inability of the Custodian to value or to sell an illiquid investment, or the generation of unrelated business taxable income with respect to an investment.

Unless the Depositor (the Authorized Agent or, following the death of the Depositor, the Beneficiary) sends the Custodian written objection to any statement, notice, confirmation or report within ninety (90) days of receipt from the Custodian, the Depositor (the Authorized Agent or the Beneficiary) shall be deemed to have approved of such statement, notice, confirmation or report, and the Custodian and the Company, and their officers, employees and agents shall be forever released and discharged from all liability and accountability to anyone with respect to their acts, transactions, duties and responsibilities as shown on or reflected by such statement, notice, confirmation or report(s).

To the fullest extent permitted by law, the Depositor (the Authorized Agent, or, following the death of the Depositor, the Beneficiary) shall at all times fully indemnify and save harmless the Custodian, the Company and their agents, affiliates, successors and assigns and their officers, directors and employees, from any and all liability arising from the Depositor's (the Authorized Agent's or following the death of the Depositor, the Beneficiary's) direction under this account and from any and all other liability whatsoever which may arise in connection with this Agreement except liability arising from gross negligence or willful misconduct on the part of the indemnified person. The Custodian shall not have any responsibility or liability for the actions or inactions of any successor or predecessor custodian of this Account.

**22. Delegation to Agents.** The Custodian may delegate to one or more entities the performance of recordkeeping, ministerial and other services in connection with the Custodial Account, for a reasonable fee (to be paid by the Custodian and not by the Custodial Account). Any such agent's duties and responsibilities shall be confined solely to the performance of such services, and shall continue only for so long as the Custodian named in the Application or its successor serves as Custodian or otherwise deems appropriate.

Although the Custodian shall have no responsibility to give effect to a direction from anyone other than the Depositor (or, following the death of the Depositor, the Beneficiary), the Custodian may, in its discretion, establish procedures pursuant to which the Depositor (or following the death of the Depositor, the Beneficiary) may delegate, in a form and manner acceptable to the Custodian, to a third party any or all of the Depositor's (or following the death of the Depositor, the Beneficiary's) powers and duties hereunder. Any such third party to whom the Depositor (or following the death of the Depositor, the Beneficiary) has so delegated powers and duties shall be treated as the Depositor (or following the death of the Depositor, the Beneficiary) for purposes of applying the preceding sentences of this paragraph and the provisions of this Agreement.

**23. Amendment of Agreement.** The Custodian may amend this Agreement in any respect at any time (including retroactively), so that it may conform with applicable provisions of the Code, or with any other applicable law as in effect from time to time, or to make such other changes to this Agreement as the Custodian deems advisable. Any such amendment shall be effected by delivery to the Custodian and to the Depositor (or, following the death of the Depositor, the Beneficiary) at his or her last known address, including an electronic address (as shown in the records of the Custodian) a copy of such amendment or a restatement of this Custodial Agreement. The Depositor (or following the death of the Depositor, the Beneficiary) shall be deemed to consent to any such amendment(s) if he or she fails to object thereto by sending notice to the Custodian, in a form and manner acceptable to the Custodian, within thirty (30) calendar days from the date a copy of such amendment(s) or restatement is delivered to the Depositor (or, following the death of the Depositor, the Beneficiary) to terminate this Custodial Account and distribute the proceeds, as so directed by the Depositor (the Authorized Agent, or, following the death of the Depositor, the Beneficiary).

**24. Resignation or Removal of Custodian.** The Company may remove the Custodian at any time, and the Custodian may resign at any time, upon thirty (30) days notice to the Depositor (the Authorized Agent, or, following the death of the Depositor, the Beneficiary). Upon the removal or resignation of the Custodian, the Company may, but shall not be required to, appoint a successor custodian under this Custodial Agreement; provided that any successor custodian shall satisfy the requirements of Section 408(a)(2) of the Code. Upon any such successor's acceptance of appointment, the Custodian shall transfer the assets of the Custodial Account, to such successor custodian; provided, however, that the Custodian is authorized to reserve such sum of money or property as it may deem advisable for payment of any liabilities constituting a charge on or against the assets of the Custodial Account, or on or against the Custodian or the Company. The Custodian shall not be liable for the acts or omissions of any predecessor or successor to it. Upon acceptance of such appointment, a successor custodian shall be vested with all authority, discretionary or otherwise, of the Custodian pursuant to this Agreement. If no successor custodian is appointed by the Company, the Custodial Account shall be terminated, and the assets of the Account, reduced by the amount of any unpaid fees or expenses, will be distributed to the Depositor (or, following the death of the Depositor, the Beneficiary).

**25. Termination of the Custodial Account.** The Depositor (or, following the death of the Depositor, the Beneficiary) may terminate the Custodial Account at any time upon notice to the Custodian in a manner and form acceptable to the Custodian. Upon such termination, the Custodian shall transfer the assets of the Custodial Account, reduced by the amount of any unpaid fees or expenses, to the custodian or trustee of another individual retirement account (within the meaning of Section 408 of the Code) or other retirement plan designated by the Depositor (the Authorized Agent, or, following the death of the Depositor, the Beneficiary) as described in Article VIII, Section 9. The Custodian shall not be liable for losses arising from the acts, omissions, delays or other inaction of any such transferee custodian or trustee. If notice of the Depositor's (or, following the death of the Depositor, the Beneficiary's) intention to terminate the Custodial Account is received by the Custodian and the Depositor (or following the death of the Depositor, the Beneficiary) has not designated a transferee custodian or trustee for the assets in the Account, then the Account, reduced by any unpaid fees or expenses, will be distributed to the Depositor (or, following the death of the Depositor, the Beneficiary).

**26. Governing Law. This Agreement, and the duties and obligations of the Company and the Custodian under this Agreement, shall be construed, administered and enforced according to the laws of the Commonwealth of Massachusetts, except as superseded by federal law or statute.**

**27. When Effective.** This Agreement shall not become effective until acceptance of the Application by or on behalf of the Custodian at its principal office, as evidenced by a notice to the Depositor (or following the death of the Depositor, the Beneficiary).

Fidelity INVESTMENTS